**Law Offices of Robert A. Stutman, P.C.**
Ahmed S. Diab, Esq., SBN 262319
750 B Street, 33rd Floor
San Diego, CA 92101
DiabA@Stutmanlaw.com
**Office**: (619) 937-6272 ext. 210
**Fax**: (619) 374-1678

Attorneys for LIBERTY MUTUAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TRABAKOOLAS and SHEILA STETSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>WATTS WATER TECHNOLOGIES, INC., WATTS REGULATOR CO., WATTS ANDERSON-BARROWS METAL CORP., WATTS PLUMBING TECHNOLOGIES (TAIZHO) CO., LTD., SAVARD PLUMBING COMPANY, WOLVERINE BRASS, INC., AND JOHN DOES 1-100,<br><br>        Defendants. | U.S. District Court for the Northern District of California<br><br>Case No. 4:12-cv-01172-YGR<br><br>**LIBERTY MUTUAL INSURANCE COMPANY'S MOTION TO QUASH, MOTION FOR A PROTECTIVE ORDER, AND MOTION FOR SANCTIONS** |

**LIBERTY MUTUAL INSURANCE COMPANY'S
MOTION TO QUASH,
MOTION FOR A PROTECTIVE ORDER, AND MOTION FOR SANCTIONS**

Liberty Mutual Insurance Company ("Liberty Mutual"), movant, through undersigned counsel, Law Offices of Robert A. Stutman, P.C., moves to quash, moves for a protective order, and moves for sanctions from the subpoena to testify putatively served on Liberty Mutual, a non-party, on September 21, 2012, in the above federal lawsuit pending in the U.S. District Court for the Northern District of

California by Defendants, Watts Regulator Co., Watts Water Technologies, Inc. & Wolverine Brass, Inc (collectively, "Watts"). Watts' subpoena is improper because it is unduly burdensome; it requires non-party officer(s) to travel more than 100 miles to testify; and the topics of testimony are irrelevant, unlimited in scope, duplicative, and call for non-discoverable or privileged information.  For the foregoing reasons, Liberty Mutual moves this Court to quash Watts' subpoena to testify pursuant to Fed. R. Civ. P. 45(c)(3)(A) & (B) and Liberty Mutual seeks a protective order enjoining Watts from seeking discovery from Liberty Mutual in the underlying litigation pursuant to Fed. R. Civ. P. 26(c)(1)(A).  Liberty Mutual is entitled to appropriate sanctions in the form of attorneys' fees, costs and other amounts this Court deems appropriate pursuant to Fed.R. Civ. P. 37(a) and Fed. R. Civ. P. 45(c)(1).  Liberty Mutual's proposed Order is attached hereto as <u>Exhibit A</u>.

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

/s/ ***Ahmed S. Diab***

By:_____
Ahmed S. Diab, Esq., SBN 262319
750 B Street, 33rd Floor
San Diego, CA 92101
**Office**: (619) 937-6272 ext. 210
**Fax**: (619) 374-1678
*Attorneys for Liberty Mutual Insurance Company*

1  **Law Offices of Robert A. Stutman, P.C.**
   Ahmed S. Diab, Esq., SBN 262319
   750 B Street, 33rd Floor
2  San Diego, CA 92101
   DiabA@Stutmanlaw.com
3  **Office**: (619) 937-6272 ext. 210
   **Fax**: (619) 374-1678
4  Attorneys for LIBERTY MUTUAL INSURANCE COMPANY

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11  JASON TRABAKOOLAS and SHEILA       :
    STETSON, individually and on behalf of all   :   U.S. District Court for the
12  others similarly situated,             :   Northern District of California
                          Plaintiffs,         :
13                                      :   Case No. 4:12-cv-01172-YGR
                                         :
14           v.                         :   **LIBERTY MUTUAL**
                                         :   **INSURANCE COMPANY'S**
15  WATTS WATER TECHNOLOGIES, INC.,   :   **MEMO OF LAW IN SUPPORT**
    WATTS REGULATOR CO., WATTS        :   **OF ITS MOTION TO QUASH,**
16  ANDERSON-BARROWS METAL CORP.,   :   **MOTION FOR A PROTECTIVE**
    WATTS PLUMBING TECHNOLOGIES      :   **ORDER, AND MOTION FOR**
17  (TAIZHO) CO., LTD., SAVARD PLUMBING   :   **SANCTIONS**
    COMPANY, WOLVERINE BRASS, INC.,   :
18  AND JOHN DOES 1-100,               :
                                         :
19           Defendants.                :

20

21          **MEMORANDUM OF LAW IN SUPPORT OF LIBERTY MUTUAL'S**
                **MOTION TO QUASH, MOTION FOR A PROTECTIVE ORDER,**
22                      **AND MOTION FOR SANCTIONS**

23

24  **I.      BACKGROUND**

25

26          Liberty Mutual Insurance Company (hereinafter "Liberty Mutual") is not a party to the

27  underlying case.  In the underlying class action, <u>Trabakoolas et al. v. Watts et al.</u>, 4:12-cv-01172-YGR,

28  pending in the U.S. District Court for the Northern District of California, the plaintiffs, Jason

Trabakoolas and Sheila Stetson (hereinafter "Trabakoolas," and "Stetson" or collectively, "plaintiffs"), on behalf of themselves and others similarly situated, filed suit against Defendants, Watts Water Technologies, Inc., Watts Regulator Co. and Wolverine Brass, Inc. (hereinafter, "defendants" or "Watts"). Plaintiffs allege defects in toilet water supply line connectors designed and manufactured by Watts. Plaintiffs assert causes of action for negligence, strict products liability, failure to warn, and violations of the California Unfair Competition Law, the California Legal Remedies Act ("CLRA") and the Song-Beverly Consumer Warranty Act. A copy of the First Amended Complaint is attached hereto as Exhibit B. Plaintiffs' prayer for relief includes monetary relief for water damages caused as a result of the failed toilet supply lines as well as injunctive relief for the replacement of the defective lines in the homes of consumers.

Trabakoolas and Stetson each had a homeowners or condominium insurance policy with Liberty Mutual which covered some of the plaintiffs' losses from water damages caused by the defective toilet supply lines manufactured by Watts.

On June 22, 2012, Watts issued two subpoenas duces tecum to Liberty Mutual with a total of 40 separate document requests. Copies of the two June 22nd subpoenas duces tecum issued to Liberty Mutual by Watts are attached hereto as Exhibit C and Exhibit D. Liberty Mutual engaged the Law Offices of Robert A. Stutman, P.C. (hereinafter "Stutman") for legal representation with respect to responding to the two subpoenas duces tecum. Liberty Mutual and its counsel, Stutman, conducted a diligent and thorough search for all documents responsive to Watts' 40 separate requests, most of which are overly broad, unduly burdensome, or seek privileged materials. On July 24, 2012, Liberty Mutual served Watts with formal Responses and over 500 documents responsive to Watts' 40 requests. Liberty Mutual supplemented its document production on September 7, 2012 and issued formal Supplemental Responses on September 26, 2012. Liberty Mutual expended over 25 work-hours responding to Watts' subpoenas duces tecum, in addition to incurring attorneys' fees and costs.

Thereafter, on September 18, 2012, through Stutman, Liberty Mutual accepted by waiver of service a subpoena duces tecum issued by the plaintiffs in the underlying class action case.   A copy of plaintiffs' subpoena duces tecum to Liberty Mutual is attached hereto as <u>Exhibit E</u>.   Plaintiffs' subpoena duces tecum is the third subpoena issued to Liberty Mutual in this matter, to which Liberty Mutual is not a party.   The plaintiffs' subpoena duces tecum contains 5 separate categories of document requests, of which one category has 8 subparts.

On September 21, 2012, Watts delivered yet another subpoena upon Liberty Mutual.[1]  Watts' subpoena to testify to Liberty Mutual is the fourth subpoena issued on Liberty Mutual in a case to which it is not a party.  A copy of the subpoena to testify issued to Liberty Mutual is attached hereto as <u>Exhibit F</u>.  It is this subpoena to testify issued to Liberty Mutual that Liberty Mutual seeks to quash.

Watts' subpoena to testify contains 15 separate topics of testimony covering a wide range of topics, none of which are remotely relevant to the underlying products liability or consumer protection case or to Watts' defenses.   The topics of testimony 1-6 seek the insurance company's policies, procedures and practices with respect to document retention, claims handling, responding to plaintiffs' subpoena, claims payments and copies of the policies of the different lines of insurance under which water loss claims for failed toilet lines were made.   The topics of testimony 7-8 seek testimony regarding Liberty Mutual's policies, practices and procedures relating to its legal efforts to subrogate payments made to insureds from water loss claims for failed toilet supply lines.   The topic of testimony 9 seeks Liberty Mutual's efforts to test Watts' toilet supply lines.   The topics of testimony 10-11 seek

---

[1] Also on September 21, 2012, Watts delivered two subpoenas to Stutman issued from the U.S. District Court for the Central District of California in the same underlying class action litigation.  These are the fifth and sixth subpoenas issued in this matter.  Watts' subpoena to testify to Stutman inappropriately commands a representative from Stutman, Liberty Mutual's attorneys, to testify regarding 4 topics of testimony related to the firm's representation of Liberty Mutual.  A copy of Watts' subpoena to testify to Stutman is attached hereto as <u>Exhibit G</u>.  Equally improper, Watts' subpoena to produce issued to Stutman propounds documents related to its legal representation of Liberty Mutual.  A copy of Watts' subpoena to produce issued to Stutman is attached hereto as <u>Exhibit H</u>.  In opposition to Watts' subpoenas, Stutman filed motions to quash, motions for a protective order and motions for sanctions in the U.S. District Court for the Central District of California.

  
testimony related to the relationship between Liberty Mutual and the plaintiffs, including insurance policies, claims and underwriting.   Topics of testimony 12-15 seek testimony related to communications between Liberty Mutual and the plaintiffs regarding the potential or existing claims against Watts; communications related to past, current or future litigation against Watts; communications about plaintiffs' subpoena; and any other communication regarding the failure of any plastic coupling nut attached to a toilet supply line.

Watts' irrelevant, overly broad and unduly burdensome subpoena to testify would necessarily require Liberty Mutual to produce multiple people from different locations, at its expense, to testify on topics which are not germane to the underlying case or defenses.  This would be an endless, costly and ultimately unproductive fishing expedition.  Moreover, Watts' subpoena to testify was delivered upon Liberty Mutual at its satellite claims office located in Sacramento, California.  Liberty Mutual's headquarters and principle place of business are located in Boston, Massachusetts and its subrogation office is located in Allentown, Pennsylvania, both of which are almost 3,000 miles from Sacramento, California.

Liberty Mutual is not a party to this action.  Nevertheless, it has already spent a considerable amount of work-hours and has incurred costs and fees associated with responding to three subpoenas duces tecum in this litigation.  Now, Liberty Mutual and Stutman must spend additional time and resources to oppose Watts' subpoenas, which are blatant abuses of the courts' subpoena powers.

Watts' subpoena to testify to Liberty Mutual is improper because it is unduly burdensome; it requires non-party officer(s) to travel more than 100 miles to testify; and the topics of testimony are irrelevant, unlimited in scope, duplicative, and call for non-discoverable or privileged information. Liberty Mutual provided Watts the opportunity to resolve this matter by withdrawing its improper

subpoena, but Watts refuses to do so.  Correspondence between Liberty Mutual's counsel and Watts' counsel attempting to resolve the dispute are attached hereto as <u>Exhibit I</u>.

For the reasons stated above, Liberty Mutual moves this Court to quash Watts' subpoena to testify and issue a protective order enjoining Watts from seeking discovery from Liberty Mutual in the underlying litigation.  Liberty Mutual also seeks sanctions against Watts for attorneys' fees, costs incurred by Liberty Mutual, and any other amount this Court deems appropriate pursuant to Fed. R. Civ.P. 37(a)(5) and Fed. R.Civ.P. 45(c)(1).

## II.    STANDARD OF REVIEW

The U.S. District Court for the Eastern District of California has jurisdiction over this issue despite the underlying action being litigated in the U.S. District Court for the Northern District of California because Watts' subpoena to testify to Liberty Mutual was issued from this Court and commands the deposition to take place in Sacramento, California.  Controversies regarding depositions of non-parties are decided by the court which issued the subpoena (where the deposition is being taken), unless the non-party consents to determination elsewhere. <u>SEC v. CMKM Diamonds, Inc.</u> 656 F3d 829, 832 (9th Cir. 2011); but see <u>Lefkoe v. Jos. A. Bank Clothiers, Inc.</u> 577 F3d 240, 247(4th Cir. 2009).

Rule 45(c)(3)(A) states that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it subjects a person to undue burden." Fed.R.Civ.P. 45. Liberty Mutual received Watts' subpoena to testify on September 21, 2012 commanding testimony to be taken on October 31, 2012.  Therefore, the filing of Liberty Mutual's motion to quash, motion for a protective order and motion for sanctions is timely.

## III.    ARGUMENT

LAW OFFICES OF ROBERT
A. STUTMAN, P.C.

Watts' subpoena to Liberty Mutual flagrantly violates Rule 45(c) of the Federal Rules of Civil Procedure and constitutes an abuse of judicial process.  The courts provide extra protection to non-parties subject to discovery requests.  "Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." United States v. Columbia Broad. Sys., Inc., 666 F.2d 364, 371 (9th Cir. 1982).  Further, restrictions applied to discovery, "may be broader when a nonparty is the target of discovery."  Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir. 1980).  More recently, district courts have reiterated the Ninth Circuit's intent to protect non-parties in discovery.  The court in High Tech Med. Instrumentation, Inc. v. New Image Indus, Inc., 161 F.R.D. 86 (N.D. Cal. 1995), held that "the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." Id. at 88.

Watts' topics of testimony in its subpoena are overly broad and so far afield from the subject matter of the underlying litigation that the subpoena is nothing more than an attempt to harass Liberty Mutual.  Liberty Mutual provided Watts with the opportunity to withdraw its improper subpoena, but Watts refuses to do so.  Liberty Mutual, as a non-party to this litigation, prays for this Court to quash Watts' subpoena in accordance with Fed. R. Civ. P. 45(c)(3), issue a protective order in accordance with Fed. R. Civ. P. 26(c), and award sanctions against Watts for attorneys' fees and costs incurred by Liberty Mutual as well as other amounts deemed appropriate by this Court pursuant to Fed. R. Civ.P. 37(a)(5) and Fed. R.Civ.P. 45(c)(1).

      **a.**    **Watts' Subpoena to Liberty Mutual Must Be Quashed Pursuant to Fed. R. Civ. P. 45(c)(3)(A) Because the Subpoena is Unduly Burdensome, Requires the Deponent to Travel More Than 100 Miles, and Seeks Privileged Information**

Rule 45(c)(3)(A) sets forth the basis for a court to quash or modify a subpoena. In particular, it provides:

On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

> (i) fails to allow reasonable time for compliance;
>
> (ii) requires a person who is not a party ... to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business ..., or
>
> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>
> (iv) subjects a person to undue burden.

The Federal Rules of Civil Procedure mandate that the Court quash Watts' subpoena to testify to Liberty Mutual because i) it imposes undue burden and expense on Liberty Mutual, ii) it requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person, and iii) it requires the disclosure of privileged and non-discoverable information.

### i.     Watts' Subpoena Is Improper Because It Is Unduly Burdensome Pursuant to Rule 45(c)(3)(A)(iv)

Watts' subpoena is globally improper because the 15 topics of testimony seek to impose undue burdens and expenses on Liberty Mutual, who is not a party to the litigation.  Contesting subpoenas or responding to subpoenas is time consuming and costly.  Thus "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1).  Watts has taken no action to avoid imposing undue burden or expense on Liberty Mutual.  The subpoena power is a substantial delegation of authority, and those who invoke it have a grave responsibility to ensure it is not abused.  Thoefel v. Farley-Jones, 359 F.3d 1066, 1074-75 (9th Cir. 2004).  Watts blatantly disregarded its responsibility and caused an improper and abusive subpoena to be issued to Liberty Mutual.

Watts' subpoena seeks information through deposition testimony that is entirely irrelevant to the underlying action.   For this reason alone, Watts' subpoena is fundamentally inappropriate. Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena. Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter, 211 F.R.D. 658, 662 (D.Kan.2003).   Specifically, under Rule 45(c)(3)(A), "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" Travelers Indem. Co. v. Metropolitan Life Insur. Co., 228 F.R.D. 111, 113 (D.Conn.2005), and, in particular, requires the court to consider, "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Id. (quoting United States v. IBM, 83 F.R.D. 97, 104 (S.D.N.Y.1979)).

Here, the underlying litigation is a class action product liability and consumer protection case. Yet, the 15 topics of testimony enumerated in Watts' subpoena do not have a scintilla of relevance to plaintiffs' causes of action or Watts' defenses.   The topics 1-6 seek the testimony regarding Liberty Mutual's policies, procedures and practices with respect to document retention, claims handling, responding to plaintiffs' subpoena, claims payments and copies of the policies of the different lines of insurance under which water loss claims for failed toilet supply lines were made.   (See Exhibit F, Watts' subpoena to testify).  Those topics have no relationship to design defect or consumer protection claims against Watts for its defective toilet supply lines or Watts' defenses.   (See Exhibit B, Plaintiffs First Amended Complaint.)

The topics of testimony 7-8 seek testimony related to Liberty Mutual's policies, practices and procedures relating to its legal efforts to subrogate payments made to insureds from water loss claims for failed toilet supply lines.   (See Exhibit F, Watts' subpoena to testify).   Notwithstanding the

privileged and unlimited nature of the requested information, Liberty Mutual's efforts to subrogate its claims bear no relevance to plaintiffs' claims for compensation of out-of-pocket losses and injunctive relief related to Watts' defective toilet supply lines.   Liberty Mutual is not, to date, pursuing subrogation for the losses that it paid out on behalf of the Trabakoolas and Stetson claims for water damage.

Watts is abusing judicial process in an attempt to unlawfully gain information from Liberty Mutual on subrogation claims that Liberty Mutual is litigating against Watts in other forums through discovery in the underlying class action litigation. Such misuse of judicial process is improper and abusive; particularly here where the information sought is entirely irrelevant to the underlying class action case.

Likewise, the topic of testimony 9, which seeks Liberty Mutual's efforts to test Watts' toilet supply lines, is nothing more than another inappropriate attempt by Watts to obtain information from Liberty Mutual in other matters unrelated to the underlying class action.  (See <u>Exhibit F</u>, Watts' subpoena to testify).   Further, the topic of testimony 9 seeks information that is privileged, non-discoverable, and unlimited in scope.  Watts is simply fishing for expert information, to which it is not entitled.

The topics of testimony 10-11 seek testimony related to the relationship between Liberty Mutual and the plaintiffs, including insurance policies, claims and underwriting files.  The topics of testimony 12-15 seek testimony related to communications between Liberty Mutual and the plaintiffs regarding the potential or existing claims against Watts; communications regarding past, current or future litigation against Watts; communications about plaintiffs' subpoena; and any other communication regarding the failure of any plastic coupling nut attached to a toilet supply line.  (See <u>Exhibit F</u>, Watts' subpoena to testify).  The information sought through these topics of testimony is

privileged and unlimited in scope.  Moreover, the requested information that is not objectionable on its face is largely duplicative of the information already produced to Watts by Liberty Mutual in response to the two Watts' subpoenas issued to Liberty Mutual dated June 22nd.  Both of Watts' June 22nd subpoenas to Liberty Mutual sought 40 separate categories of documents ranging from the plaintiffs' claim files, underwriting files, subrogation efforts, arbitration agreements to all communications with the plaintiffs regarding Watts and the litigation against Watts.  (See Exhibit C & Exhibit D, Watts' June 22, 2012 subpoenas duces tecum to Liberty Mutual).   In response to the two June 22nd subpoenas, Liberty Mutual, in good faith and at great expense, conducted a reasonable and diligent search for all discoverable responsive documents to each and every one of Watts' 40 requests. Liberty Mutual served Watts with formal Responses, Supplemental Responses and over 500 pages of documents responsive to Watts' 40 requests.  Liberty Mutual spent over 25 work-hours in responding to the two June 22nd Watts' subpoenas duces tecum, including attorneys' fees and costs in connection with a litigation to which it is not a party.  The information sought by the Watts' subpoena to testify is cumulative of the information that was provided to Watts in response to the June 22nd subpoenas duces tecum.

In complete and utter disregard for Rule 45(c)(1) and 45(c)(3)(A)(iv), Watts attempts to impose additional, duplicative, and undue burdens and expenses on Liberty Mutual.  The Watts' subpoena is grossly improper in that its purpose is to harass, threaten, annoy, vex or intimidate Liberty Mutual. Weighing the burden to a non-party, Liberty Mutual, against the value of the information to Watts, the Court should find that the subpoena imposes an "undue burden" on non-party Liberty Mutual. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005).  The only just remedy is for this Court to quash Watts' subpoena to testify addressed to Liberty Mutual, to issue a protective order to protect Liberty Mutual from any further harassment and improper use of judicial process by Watts, and to sanction Watts for its abuse of judicial process.

**ii.    Watts' Subpoena is Improper Because It Requires a Non-Party to Travel More Than 100 Miles to Testify Pursuant to Fed.R. Civ. P. 45(c)(3)(A)(ii)**

Federal Rule of Civil Procedure 45(c)(3)(A)(ii) provides that a non-party who neither "resides, is employed, or regularly transacts business in person" within 100 miles of the place they are commanded to appear, may move to have the court "quash or modify" the subpoena. The Court has held that "regularly transacts business in person" means just what it says.  Regents of Univ. of California v. Kohne, 166 F.R.D. 463, 464 (S.D. Cal. 1996) *dismissed on other grounds*, 113 F.3d 1256 (Fed. Cir. 1997).   Compliance with Watts' subpoena to testify would necessitate Liberty Mutual to produce multiple people from different locations, at its expense, to testify on a wide range of topics which are not relevant to the underlying case or defenses.   Watts' subpoena to testify issued by this Court was delivered upon Liberty Mutual at its satellite claims office located in Sacramento, California. The Trabakoolas and Stetson insurance claims for the water damage from the defective toilet supply lines were adjusted at Liberty Mutual's Sacramento claims office.    However, Liberty Mutual's headquarters and principle place of business are located in Boston, Massachusetts, which is approximately 3,000 miles from Sacramento, and Liberty Mutual's subrogation office is located in Allentown, Pennsylvania, which is 2,762 miles from Sacramento.   Liberty Mutual cannot produce a witness who regularly conducts business within 100 miles of Sacramento to testify to any of the 15 overly broad topics of testimony subpoenaed by Watts. Regents of University of California v. Kohne, 166 F.R.D. 463 (S.D.Cal.1996), (holding that 45(c)(3)(A)(ii) means that one is at a greater distance than 100 miles when one neither "resides, is employed, or regularly conducts business in person" there).  In Iorio v. Allianz Life Ins. Co. of N. Am., , 05CV633 JLS (CAB), 2009 WL 3415689 (S.D. Cal. Oct. 21, 2009) (Not Reported), the court granted a non-party's motion to quash a subpoena to testify because the subpoenas at issue required a non-party to travel more than 100 miles to attend trial and the witnesses were not traveling from within California.   Likewise, the the subpoena at issue here improperly requires representatives from Liberty Mutual to travel more than 100 miles to testify and

travel from another state to California to testify.  Therefore, the Court must grant Liberty Mutual's motion to quash pursuant to Fed. R. Civ. P. 45(c)(3) (A)(ii).

### iii. Watts' Subpoena is Improper Pursuant to Fed.R. Civ. P. 45(c)(3)(A)(iii) Because it Requires Disclosure of Privileged or Protected Matter

Fed. R. Civ. P. 45(c)(3)(A)(iii) provides that a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  The first question under Rule 45(c)(3)(A)(iii) is whether the matter is "privileged or other protected matter."  Liberty Mutual asserts that the 15 topics of testimony are protected by the attorney-client privilege.  Notwithstanding a few exceptions that do not apply in this matter, the attorney-client privilege states that "[a] lawyer shall not reveal information relating to the representation of a client." ABA Model R. Prof. Conduct 1.6 (2012).  The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  The privilege's purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. Id.  In *Trammel v. United States, 445 U.S. 40, 51 (1980)*, the Court held that "The lawyer-client **privilege** rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."

In this country, the attorney-client privilege is a sacred right and Liberty Mutual asserts the privilege and refuses to disclose communications between Liberty Mutual and its attorneys. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." In re Grand Jury Investigation (Corporation), 974 F.2d 1068, 1070 (9th Cir.1992).  The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation. United States v. Chen, 99

F.3d 1495, 1501 (9th Cir. 1996). Testimony sought regarding communications related to subrogation, arbitration and other litigation between Liberty Mutual, its attorneys, the plaintiffs or the plaintiffs' attorneys are therefore protected by the attorney-client privilege because those communications were made for the purpose of legal advice for Liberty Mutual. Courts have determined that a communication is protected if the client reasonably believes it is communicating with a lawyer in an effort to obtain legal advice. Werder v. Marriott Int.'l, Inc. et al., W.D.Pa., September 20, 2012. (Memorandum Order is attached hereto as Exhibit J). Accordingly, topics of testimony 4-9 and 12-15 seek information protected by the attorney-client privilege. (See Exhibit F, Watts' subpoena to testify).

Similarly, the attorney work-product doctrine provides that materials, statements or mental impressions prepared with an eye towards the realistic possibility of impending litigation are non-discoverable. Fed. R. Civ. P. 26(b). Moreover, under that doctrine, even if the Court orders documents produced, it "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). In the seminal case of Hickman v. Taylor, 329 U.S. 495 (1947), the Supreme Court first recognized the doctrine pursuant to the principle that permitting attorneys to prepare their cases without fear that their work product would be used against their clients advances the adversarial system. Id. at 510-11. In United States v. Nobles, 422 U.S. 225, 238 (1975), the Supreme Court further opined that the doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."

The wide array of topics of testimony covered by the subpoena, include but are not limited to, Liberty Mutual's policies, practices, and communications between themselves, their attorneys, plaintiffs and plaintiffs' attorneys regarding subrogation, arbitration and litigation of claims. (See Exhibit F, Watts' subpoena to testify, topics of testimony 1-15). No doubt this information is classified as "other protected matter" within the meaning of the rule in addition to being protected by the

attorney-client privilege.   The information sought by Watts will contain mental impressions, conclusions, opinions, or legal theories of Liberty Mutual and their attorneys concerning its own legal efforts which the Court is required to protect under Fed. R. Civ. P. 26(b)(3)(B).   Perrey v. Televisa, S.A. DE C.V., CV 09-06508 FMC (RZ), 2009 WL 3876198 (C.D. Cal. Nov. 18, 2009) (Not Reported) (communications between counsel for a non-party and a party's attorney is "other protected matter" within the meaning of the rule.)

Since the information is "other protected matter" under Rule 45(c)(3)(A)(iii), the Court must quash or modify the subpoena "if no exception or waiver applies." Id.   Since the same rules of privilege govern scope of discovery as generally govern admissibility of evidence at trial, a party may obtain pretrial discovery of materials allegedly subject to attorney-client privilege where materials fall within some exception to privilege or where protection of privilege will be waived at trial. Handgards, Inc. v. Johnson & Johnson, 413 F.Supp. 926 (N.D. Cal. 1976).   However, no exception or waiver applies here where Liberty Mutual has been steadfast in asserting protection against discovery of any and all privileged or non-discoverable materials.

      **b.**       **This Court Should Quash Watts' Subpoena to testify to Liberty Mutual Pursuant to Fed.R.Civ.P. 45(c)(3)(B) Because the Subpoena Seeks the Disclosure Of Non-Discoverable Information**

Fed.R.Civ.P. 45(c)(3)(B) provides for the circumstances in which a court may modify or quash a subpoena. These circumstances arise when the subpoena requires disclosure of research, development, or commercial information; disclosure of certain expert opinions; or require a non-party to incur substantial expense to travel more than 100 miles to attend a trial. See Rule 45(c)(3)(B) (i-iii). Liberty Mutual asserts that topics of testimony 1-15 would by their nature not only require the disclosure of confidential company research, development and commercial information, but would disclose certain expert opinions that are protected.  (See Exhibit F, Watts' subpoena to testify topics of testimony 1-15). Where the subpoena here requires disclosure of a trade secret or other confidential

research, development, or commercial information, or the disclosure of certain expert opinions, the court may quash the subpoena." Fed.R.Civ.P. 45(c)(3)(B).

    **c.**      **Liberty Mutual Is Entitled to a Protective Order Pursuant to Fed.R.Civ.P. 26(c)**

This Court should order a protective order under Rule 26(c) because the Court needs to protect Liberty Mutual from further annoyance, embarrassment, oppression, undue burden and expense caused by Watts' subpoena.   Under Federal Rule of Civil Procedure Rule 26(b)(1), "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense...relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   The District Court for the Northern District of California has held that relevancy, for the purposes of discovery, is defined broadly, although it is not without "ultimate and necessary boundaries."  <u>Pacific Gas and Elec. Co. v. Lynch</u>, 2002 WL 32812098, at \*1 (N.D.Ca. August 19, 2002) (Not Reported).  Rule 26(a)(1), while seemingly all-encompassing, is limited by Rule 26(b)(2).  A court, however, has discretion to limit discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2).

Liberty Mutual is entitled to a protective order under any one of the three prongs of the Rule 26(a)(2) test.

    **i.**      **The Discovery Sought Is Unreasonably Cumulative and Can Be Obtained From the Plaintiffs In The Underlying Litigation**

This discovery is unreasonably cumulative because the topics 1-8 and 10-15 are duplicative of the documents produced pursuant to the Watts' June 22, 2012 subpoenas.  (See Exhibit F, Watts' subpoena to testify topics of testimony 1-8 and 10-15; see also Exhibit C & Exhibit D, Watts' June 22, 2012 subpoenas duces tecum to Liberty Mutual).  Additionally, the topics of testimony related to communications between Liberty Mutual and the plaintiffs can more easily be obtained from the plaintiffs, who as parties, are willing participants to the litigation and will submit to deposition testimony voluntarily.  (See Exhibit F, Watts' subpoena to testify topics of testimony 12-15).  Further, all of the topics of testimony are overly broad and will not reasonably lead to discoverable information that relates to the underlying products liability and consumer protection case or defenses.  Therefore, in light of Watts' blatant disregard of Rule 26(b)(2)(i), this Court should issue a protective order under Rule 26(c) to enjoin Watts from seeking any further discovery from Liberty Mutual in the underlying litigation.

### ii.      Watts Has Had Ample Opportunity to Obtain the Information Sought

Watts already had ample opportunity to obtain any information sought that is not privileged. As stated, the topics identified for testimony at the deposition are largely duplicative of the information already produced to Watts by Liberty Mutual in response to two subpoenas dated June 22, 2012 in this very matter.  (See Exhibit C & Exhibit D, Watts' June 22, 2012 subpoenas duces tecum to Liberty Mutual).  Liberty Mutual, in good faith, and at great expense, conducted a reasonable and diligent search for all information requested for 40 requests.  Most of the information requested from Liberty Mutual is repetitive of those requests.  Since defendants desire to continue asking duplicative questions, the subpoena to testify is grossly improper.  The only reasonable conclusion is that defendant's purpose is to harass, threaten, annoy, oppress, vex, or intimidate Liberty Mutual. Therefore, this Court should issue a protective order under Rule 26(c), in light of Defendants blatant

disregard of Rule 26(b)(2)(ii) by enjoining Watts from seeking additional discovery from Liberty Mutual in the underlying litigation.

### iii.     The Burden and Expense of the Proposed Discovery Outweighs its Likely Benefit

Since the majority of the information requested is duplicative or non-discoverable, it is extremely burdensome to command Liberty Mutual to testify.  It would be overly burdensome and expensive to send multiple representatives almost 3,000 miles to testify when they are not a party to this litigation.  Not only is the travel expensive, but also the time and expense Liberty Mutual would incur in preparing the representatives to testify is taxing on its financial resources.  Further, a majority of the information gleaned from the testimony would be objected to as privileged or irrelevant to the underlying litigation.

The real reason Watts is commanding Liberty Mutual to testify is to harass, threaten, annoy, oppress, vex, or intimidate Liberty Mutual.  Moreover, there is no perceivable benefit to having the Liberty Mutual send representatives almost 3,000 miles to testify to topics that are privileged and have no relevancy to a matter in which the Liberty Mutual is not even a party.  Therefore, this Court should issue a protective order enjoining Watts from seeking further discovery from Liberty Mutual in the underlying litigation.  Fed. R. Civ. P. R. 26(b)(2)(iii) and 26(c).

### d.     The Court Should Award Sanctions, Attorney's Fees and Costs Pursuant to Fed.R.Civ.P. 26(c)(3), 37(a) and 45(c)(1)

Reasonable expenses and attorney's fees are warranted in this matter under Rules 26(c)(3) and 37(a) of the Federal Rules of Civil Procedure because the subpoena is irrelevant to the matter and excessive in scope.  Rules 26(c)(3) and 37(a)(5) of the Federal Rules of Civil Procedure provide for the award of costs and attorney's fees in connection with an application for a protective order.  Specifically, Rule 26(c)(3) states that Rule 37(a)(5) applies to the award of expenses in connection with motions for a protective order, and Rule 37(a)(5) states that "the court must, after giving an

opportunity to be heard, require the party…whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

Furthermore, Fed.R.Civ.Pro. 45(c)(1) provides:

> A party or an attorney responsible for the issuance of and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee. If the subpoenaing party fails to take reasonable steps to avoid imposing an undue burden on a third party. Fed.R.Civ.Pro. 45(c)(1).

Sanctions are appropriate if the subpoenaing party fails to take reasonable steps to avoid imposing an undue burden on a third party. High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 161 F.R.D. 86, 88 (N.D. Cal. 1995).  In Chevron Corp. v. Salazar, 2011 WL 7112979 at *3 (D. Or. Nov. 30, 2011), the Court held that the Subpoena was at least in part meant to harass.  Even if Watts argues that the subpoenas, although extremely broad, were not issued in bad faith, this would not nullify sanctions.  The Court in Chevron held that whether the subpoenas were issued in good faith is not relevant to whether sanctions are appropriate. Id. at 4.  The only test is whether Watts took reasonable step to avoid imposing undue burden or expense.  Watts did not.  The subpoenas issued by Watts as argued above are so grossly improper that the only reasonable conclusion is that the defendants' purpose was to harass, threaten, annoy, oppress, vex, or intimidate Liberty Mutual. Watts' conduct in pursing the irrelevant, burdensome, improper, unlimited and duplicative deposition testimony of Liberty Mutual, a non-party, has necessitated the filing of the instant motion to quash and for a protective order.  Watts' use of the subpoena power of this Court is abusive.  Accordingly, sanctions are appropriate.   Liberty Mutual will supplement this motion with a breakdown of its attorneys' fees and costs associated with opposing Watts' subpoenas.

**IV.    CONCLUSION**

1  For the foregoing reasons, Liberty Mutual moves this Court to quash Watts' subpoena to testify

2  pursuant to Fed. R. Civ. P. 45(c)(3)(A) & (B) and Liberty Mutual seeks a protective order pursuant to

3  Fed. R. Civ. P. 26(c)(1)(A) enjoining Watts from seeking any further discovery from Liberty Mutual in

4  the underlying litigation.  Also, Liberty Mutual seeks an order imposing sanctions against Watts and in

5  favor of Liberty Mutual in the amount of attorneys' fees, costs, and other amounts this Court deems

6  appropriate pursuant to Fed.R. Civ. P. 26(c)(3), 37(a) and Fed. R. Civ. P. 45(c)(1).

7

8  LAW OFFICES OF ROBERT A. STUTMAN, P.C.

9

10  By:___ /s/ *Ahmed S. Diab*_____
    Ahmed S. Diab, Esq., SBN 262319
    750 B Street, 33rd Floor

11  San Diego, CA 92101
    **Office**: (619) 937-6272 ext. 210

12  **Fax**: (619) 374-1678
    *Attorneys for Liberty Mutual Insurance Company*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28